**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ADIRONDACK INSURANCE EXCHANGE,

Plaintiff,

1:23-cv-1397
(ECC/DJS)

v.

HSBC BANK, USA, N.A. a/k/a HSBC Bank, USA, N.A. ISAOA, STEVEN A. BRESLER, and GERRY-LYNN STOHR, a/k/a or f/k/a Gerry-Lynn Bresler,

Defendants.

---

Scott D. Storm, Esq., *for Plaintiff*
Ryan A. Lema, Esq., *for Defendant HSBC Bank, USA, N.A.*
Craig A. Blumberg, Esq., *for Defendant Steven A. Bresler*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Adirondack Insurance Exchange (Adirondack) commenced this federal statutory interpleader action against Defendants HSBC Bank, USA, N.A. (HSBC), Steven A. Bresler, and Gerry-Lynn Stohr a/k/a or f/k/a Gerry-Lynn Bresler seeking declaratory judgments regarding insurance policy claims following a fire at residential property owned by Mr. Bresler and Ms. Stohr and which was encumbered by a mortgage held by HSBC. *See* Dkt. No. 88.[1] Adirondack and HSBC have each moved for partial summary judgment seeking declaratory judgments regarding the distribution of funds under the insurance policy. Dkt. Nos. 42, 49. The motions are

---

[1] Adirondack filed an amended complaint on September 10, 2026 to clarify the jurisdictional allegations. *See* Dkt. Nos. 79, 81, 82, 84, 85. Adirondack has deposited the interpleader funds with the Court as required by 28 U.S.C. § 1335. *See* Dkt. No. 95. To date, Ms. Stohr has not appeared in this action.

fully briefed. Dkt. Nos. 50, 51-53, 56-59, 69, 70. For the following reasons, HSBC's motion for partial summary judgment is denied and Adirondack's motion for partial summary judgment is granted in part.

## I. BACKGROUND[2]

### A. The Bresler Defendants' Note and Mortgage on the Subject Property

Steven Bresler and Gerry-Lynn Stohr (together, the Bresler Defendants) are the record owners of the real property located at 3 Rock Ledge Road, Woodstock, New York (the Subject Property). *See* Dkt. No. 42-1 ¶ 1; Dkt. No. 48-4 (2002 deed). The Bresler Defendants were married from 2000 until their divorce in 2013. Dkt. No. 49-10 ¶ 10; Dkt. No. 52 ¶ 10; Dkt. No. 57-2 ¶ 10.

The Bresler Defendants borrowed $650,000 from HSBC Mortgage Corporation (USA) in March 2007 and executed a promissory note for the same amount. Dkt No. 42-1 ¶¶ 2-3; Dkt. No. 48-9 ¶¶ 2-3; Dkt. No. 49-11 ¶¶ 2-3; Dkt. No. 42-3 (Note dated March 16, 2007). The Bresler Defendants also granted HSBC Mortgage Corporation (USA) a mortgage on the Subject Property. *See* Dkt. No. 42-4 (Mortgage). It is undisputed that Defendant HSBC is the present assignee of the Note and Mortgage.[3]

The Mortgage obligates the Bresler Defendants to obtain "hazard or property insurance to cover all buildings and other improvements . . . on the Property." *Id.* at 9. All insurance policies and renewals "will include what is known as a 'Standard Mortgage Clause'" and "name Lender as mortgagee and/or as an additional loss payee." *Id.*; *see* N.Y. Real Prop. Law § 254(4).

---

[2] The following facts are drawn from the parties' Local Rule 56.1 statements of material facts and responses thereto, Dkt. Nos. 42-1, 48-9, 49-10, 49-11, 50, 52, 53, 57-2, 59, to the extent those facts are well-supported by pinpoint citations to the record, and from the exhibits the parties have submitted. Disputed facts are noted.

[3] All references to HSBC refer to HSBC's predecessor(s)-in-interest, where applicable.

The Bresler Defendants apparently entered into a Marital Agreement dated October 17, 2012 as part of their divorce proceedings. *See* Dkt. No. 49-5 at 13-35 (unsigned Marital Agreement). In this Marital Agreement, the Bresler Defendants "agree[d] that the present mortgage indebtedness of the marital residence exceed[ed] the value of" the Subject Property and that "pending further Order of the court or agreement of the parties, neither party shall be required to make payments towards the mortgage or property taxes." *Id.* at 20.

**B. The Insurance Policy & October 5, 2022 Fire**

Adirondack issued a Homeowners Policy of insurance covering the Subject Property for the policy period March 21, 2022 to March 21, 2023 to Mr. Bresler, the only named insured (the Policy). *See* Dkt. No. 49-3.[4] HSBC is listed as a mortgagee on the Policy. *Id.* at 10.

The Policy defines "[i]nsured" to mean "[y]ou and residents of your household who are: (1) Your relatives; or (2) Other persons under the age of 21 and in the case of any person described in a.(1) of this provision." *Id.* at 71 (defining "you" and "your" as referring to the "named insured" and "the spouse if a resident of the same household"). The Policy's mortgage clause provides: "If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear." *Id.* at 86. Finally, as relevant here the Policy provides: "[e]ven if more than one person has an insurable interest in the property covered, [Adirondack] will not be liable in any one loss: 1. To an 'insured' for more than the amount of such 'insured's' interest at the time of loss; or 2. For more than the applicable limit of liability." *Id.* at 84.

On October 5, 2022, there was a fire at the Subject Property which caused damage to the dwelling. Dkt. No. 42-1 ¶ 11; Dkt. No. 48-9 ¶ 11; Dkt. No. 49-11 ¶ 11. Mr. Bresler submitted a

[4] Adirondack has issued insurance policies with respect to the Subject Property since March 2014. Dkt. No. 49-10 ¶ 2; Dkt. No. 52 ¶ 2; Dkt. No. 57-2 ¶ 2. HSBC asserts that it has paid the full premiums for this homeowners insurance for "many years." Dkt. No. 51 at 5.

Sworn Statement in Proof of Loss dated January 5, 2023 in which he claimed $674,277.91 in loss and damage to the Subject Property. Dkt. No. 42-9.[5] Mr. Bresler also stated that "[n]o other person or persons had any interest [in the Subject Property] or incumbrance thereon" except "mortgage." *Id.* Although Mr. Bresler currently disputes "any obligation under the mortgage and note," he does not dispute that the amount due on the Note and Mortgage as of the date of the fire exceeded the value of the loss to the dwelling at the Subject Property. *See* Dkt. No. 48-9 ¶ 14.

### C. Mortgage Foreclosure Actions & FAPA

The Bresler Defendants defaulted on the Note and Mortgage beginning in approximately 2011. *See* Dkt. No. 49-2 ¶ 17; Dkt. No. 52 ¶ 16; Dkt. No. 57-2 ¶ 16. HSBC commenced a mortgage foreclosure action in New York Supreme Court, Ulster County, in November 2012 which was dismissed for HSBC's "failure to proceed" with the action. *See HSBC Bank, USA, N.A. v. Bresler*, No. EF2018-4400, 2021 WL 9815666, at *1 (N.Y. Sup. Ct. Dec. 14, 2021), *rev'd*, *HSBC Bank, USA, N.A. v. Bresler*, 212 A.D.3d 1 (3d Dep't 2022). After sending a letter to the Bresler Defendants purportedly de-accelerating the loan, HSBC commenced a second mortgage foreclosure action in December 2018. *See id.* at *2. New York Supreme Court granted the Bresler Defendants' motion to dismiss the second foreclosure action as time-barred by the six-year statute of limitations, finding that the de-acceleration letter did "not contain language that is clear and unambiguous as to the de-acceleration." *Id.* at *2-3. In November 2022, the Appellate Division, Third Department reversed and reinstated HSBC's foreclosure action as timely, finding that the de-acceleration notice was "sufficiently clear and unambiguous to be valid and enforceable." *Bresler*, 212 A.D.3d at 5.

---

[5] Any dispute between Adirondack and Mr. Bresler regarding coverage for damage to personal property is not at issue on the present motions. Where applicable, references to coverage for or damage to the "Subject Property" refer to coverage for or damage to the dwelling.

On December 30, 2022, New York enacted the Foreclosure Abuse Prevention Act (FAPA), which took "effect immediately" and applied "to all actions . . . in which a final judgment of foreclosure and sale has not been enforced." *Article 13 LLC v. Ponce De Leon Fed. Bank*, 175 F.4th 397, 404 (2d Cir. 2026) (citation omitted). FAPA was apparently intended to address "lenders' attempts to manipulate statutes of limitations," *see Article 13 LLC v. Ponce De Leon Fed. Bank*, 45 N.Y.3d 441, 450-51 (2025), and sets forth "the process available to noteholders to foreclose a mortgage, including the manner in which the statute of limitations may be tolled or restarted, while also ensuring that homeowners are not overburdened by having to defend multiple actions ad infinitum," *U.S. Bank N.A. v. Lynch*, 233 A.D.3d 113, 116-17 (3d Dep't 2024); *see also* 2022 Sess. Law News of N.Y. Ch. 821 (McKinney).

After the enactment of FAPA, the Bresler Defendants filed a motion to renew with the Third Department. *See HSBC Bank, USA, N.A. v. Bresler*, 239 A.D.3d 1051 (3d Dep't 2025). The Third Department held that the "de-acceleration letter that [the court] previously relied on to hold that the action was within the statute of limitations [wa]s no longer impactful because FAPA prohibits [HSBC] from de-accelerating the mortgage in such a manner." *Id.* at 1054 (citing CPLR § 3217(e)) (second citation omitted); *see also Van Dyke v. U.S. Bank, Nat'l Ass'n*, 45 N.Y.3d 461, 470 (2025) (explaining that Sections 4 and 8 of FAPA "curtailed noteholders' ability to unilaterally reset the foreclosure limitations period by de-accelerating a defaulted loan"). Because HSBC's second mortgage foreclosure action "was brought more than six years after [HSBC] accelerated the debt [in 2012], it is barred by the statute of limitations applicable to foreclosure actions." *Bresler*, 239 A.D.3d at 1054.

Since the dismissal of HSBC's foreclosure action, the New York Court of Appeals and the Second Circuit have held that the retroactive application of FAPA does not violate the New York

and U.S. Constitutions, respectively. *See generally Article 13 LLC*, 45 N.Y.3d 441 (holding that FAPA's retroactive application does not violate the right to substantive and procedural due process under the New York Constitution); *Article 13 LLC*, 175 F.4th 397 (holding that FAPA's retroactive application does not violate the right to substantive and procedural due process, the Takings Clause, or the Contracts Clause under the U.S. Constitution).[6]

## II. LEGAL STANDARD

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an

---

[6] The Court previously stayed this action pending the Second Circuit's decision in *Article 13 LLC*. *See* Dkt. No. 71 (ordering stay); Dkt. No. 73 (lifting stay).

essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emps. & Rest. Emps. Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## III. DISCUSSION

Adirondack brings this action seeking a judicial determination regarding who is entitled to recover insurance proceeds under the Policy and in what amount. *See generally* Dkt. No. 88.[7] Adirondack and HSBC have each moved for partial summary judgment seeking declarations regarding the parties' respective rights to recover under the Policy. Dkt. Nos. 42, 49. As set forth below, the requested declaratory relief generally pertains to two issues: whether HSBC has a right to recover under the Policy as mortgagee, and whether recovery under the Policy is limited to Mr. Bresler's 50% ownership interest in the Subject Property.

### A. HSBC's Right to Recovery Under the Policy

HSBC moves for partial summary judgment declaring that HSBC (1) "has an insurable interest" in the Subject Property, (2) "has a recovery interest" under the Policy as a result of damages to the Subject Property, and (3) has the "exclusive right to receive and control insurance proceeds under Coverage A for damages to the dwelling at the subject property and is entitled to apply the entirety of those proceeds to [the Bresler Defendants'] indebtedness to HSBC." Dkt. No. 42 at 1-2. Adirondack moves for a declaration that HSBC has a superior right of recovery over Mr. Bresler under the Policy and that HSBC's insurable interest and recovery is limited to Mr. Bresler's 50% ownership interest in the Subject Property. Dkt. No. 49 at 2.

Mr. Bresler argues that, following the Third Department's dismissal of HSBC's foreclosure action as time-barred, HSBC is "no longer a mortgagee" and therefore "no longer has an insurable interest" in the Subject Property which would entitle it to recover under the Policy. *See generally*

---

[7] The filing of the amended complaint does not affect the adjudication of Adirondack's and HSBC's motions for partial summary judgment.

Dkt. No. 69. HSBC responds that it had an insurable interest in the Subject Property on the date of loss and that FAPA does not "extinguish or satisfy debts." *See generally* Dkt. No. 70.[8]

New York Insurance Law provides that "[n]o contract or policy of insurance on property made or issued in this state . . . shall be enforceable except for the benefit of some person having an insurable interest in the property insured." N.Y. Ins. Law § 3401. An "insurable interest" includes "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage." *Id.* A "legal or equitable interest in the property insured is not necessary to support an insurable interest." *Ko Bar & Grill, LLC v. Midstate Mut. Ins. Co.*, 239 A.D.3d 1241, 1242 (4th Dep't 2025) (citation omitted). Rather, "a person has an insurable interest in a property whenever [the person] would profit by or gain some advantage from the property's continued existence or suffer some loss or disadvantage by its destruction." *Id.* (citation omitted); *see also Scarola v. Ins. Co. of N. Am.*, 31 N.Y.2d 411, 413 (1972) (noting that a person generally has an insurable interest in the property insured "where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against").

Here, relying on the well-established rule that a party's insurable interest is measured on the date of the loss, HSBC argues that it is entitled to recover under the Policy because it is undisputed that it possessed an insurable interest in the Subject Property on October 5, 2022, the

[8] Adirondack initially took the position that HSBC had a superior right of recovery to Mr. Bresler, *see* Dkt. No. 49-9 at 8-9, but, following the Third Department's dismissal of HSBC's foreclosure action as time-barred, now "takes no position" regarding whether HSBC "maintains an interest in the subject property and policy as mortgagee," *see* Dkt. No. 63.

date of the fire. Dkt. No. 70 at 4-6.[9] Mr. Bresler counters that the "fact" that HSBC had an insurable interest at the time of the loss "is of no consequence," citing to cases considering the effect of a debt's post-loss satisfaction on a mortgagee's right to recover insurance proceeds. Dkt. No. 69 at 7-9.

In *Whitestone Savings & Loan Association v. Allstate Insurance Co.*, the New York Court of Appeals acknowledged the "well-settled rule that rights under a fire insurance policy are fixed both as to amount and standing to recover at the time of the fire loss." 28 N.Y.2d 332, 334 (1971). The court noted that although it could be "improperly deduced" from this rule "that the mortgagee could do nothing to impair [its] rights thus fixed at the time of loss," a mortgagee can in fact impair its rights "by waiver, estoppel, assignment, or . . . discharge of the debt." *Id.* In *Whitestone*, a fire destroyed approximately 50% of the value of the insured premises and the mortgagee undisputedly "was entitled to recover" under the fire insurance policy at the time of the loss. *Id.* However, the mortgagee subsequently bid the full amount of the mortgage balance due at a foreclosure sale and received title to the property. *Id.* The court noted that this "constituted a satisfaction of the debt" and therefore the "termination of the mortgagee's insurable interest as a mortgagee." *Id.* This is because a mortgagee "is entitled to one satisfaction of his debt and no more." *Id.* at 335; *see id.* at 336 ("[F]ull or partial extinguishment of the debt itself, whether prior to the loss or subsequent to the loss, precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole reason that the debt, itself, has been to that extent extinguished." (citations omitted)). Thus, New York courts have recognized that post-loss satisfaction or extinguishment of a debt secured by a mortgage can terminate a mortgagee's insurable interest in the secured property. *See,*

[9] HSBC points to Mr. Bresler's repeated admissions that HSBC possessed an insurable interest in the Subject Property on the date of the loss. Dkt. No. 70 at 5. The Court notes that all of these admissions were made while HSBC's mortgage foreclosure action was still in place.

*e.g.*, *Citizens Sav. & Loan Ass'n of N.Y. v. Proprietors Ins. Co.*, 78 A.D.2d 377, 381 (2d Dep't 1981) (holding that plaintiff mortgagee's action to recover under insurance policy was without merit where "a satisfaction of the plaintiff's mortgage was filed . . . after the fire loss"); *Cohen v. N.Y. Prop. Ins. Underwriting Ass'n*, 160 A.D.2d 287, 288 (1st Dep't 1990) (holding that mortgagee lacked insurable interest in property at time of loss because debt was extinguished after he obtained title in foreclosure); *see Builders Affiliates, Inc. v. N. River Ins. Co.*, 91 A.D.2d 360, 362-63 (1st Dep't 1983) (noting that it is the "existence of the mortgage *debt*, not the lien, that determines whether a designated mortgagee retains an insurable interest under a fire insurance policy covering mortgaged premises") (emphasis added); *see also Whitestone*, 28 N.Y.2d at 335 (noting that a mortgagee could also lose its rights, post-loss, to recover under a mortgagee loss payable clause by assigning the mortgage). HSBC argues that this line of cases is distinguishable because the Bresler Defendants' debt "has in no way been satisfied" and HSBC is "not seeking a double recovery." Dkt. No. 70 at 7-8 (emphasis omitted).

The parties do not cite any case directly confronting the situation presented in this case—a post-loss judicial determination that a mortgage foreclosure action was time-barred—and the Court has found none. However, the Court concludes that reasoning found in New York caselaw supports the conclusion that because HSBC is barred by the statute of limitations from enforcing or collecting on the Note and Mortgage, HSBC's insurable interest in the mortgaged premises has terminated such that HSBC cannot recover under the Policy.

In New York, the "expiration of the time period prescribed in a Statute of Limitations does not extinguish the underlying right, but merely bars the remedy." *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 55 (1999) ("[T]he theory of the statute of limitations generally followed in New York is that the passing of the applicable period does not wipe out the substantive right; it

merely suspends the remedy.") (citations omitted); *see also Bank of N.Y. Mellon v. WMC Mortg., LLC*, 53 Misc.3d 967, 975 (N.Y. Sup. Ct. 2016) (collecting authorities). In some instances, however, New York cases have referred to debt which is unenforceable due to the expiration of the limitations period as extinguished. In *Federal National Mortgage Association (Fannie Mae) v. Tortora*, Fannie Mae had commenced a foreclosure action which the Fourth Department held was properly dismissed as barred by the statute of limitations. 188 A.D.3d 70, 76-77 (4th Dep't 2020). Fannie Mae nonetheless argued that, even if its foreclosure action was "time-barred to the extent it sought to recover the principal of the mortgage debt," it should be allowed to recover "interest that accrued on the principal in the six years preceding the commencement" of the action. *Id.* at 77. In rejecting this argument, the Fourth Department referred to the time-barred mortgage debt as "extinguished" and held that the accrued interest was necessarily also "extinguished." *Id.*; *see also Ajdler v. Province of Mendoza*, 33 N.Y.3d 120, 130 (2019) (holding that "once a claim on the principal is time-barred, a claim to recover unpaid postmaturity interest payments is not legally cognizable"). And in discussing a substantive due process challenge to the retroactive application of FAPA, the Court of Appeals referred to a mortgagee's "property interest in the mortgage" as being "extinguished" by the expiration of the statute of limitations. *Van Dyke*, 45 N.Y.3d at 475. Thus, it appears that New York courts would consider the debt the Bresler Defendants owe to HSBC to be extinguished.

This conclusion is further supported in this case by the fact that a court has judicially determined that HSBC's mortgage foreclosure action was untimely, coupled with New York's election of remedies rules. *See* N.Y. Real Prop. Acts. Law § 1301. In other words, the Bresler Defendants have successfully asserted, and not waived, the affirmative statute-of-limitations defense. HSBC does not explain how, even assuming the Bresler Defendants' debt still technically

exists, HSBC nonetheless retains a "lawful and substantial economic interest" in the Subject Property if the Note and Mortgage are unenforceable.

Accordingly, HSBC's motion for partial summary judgment is denied, and Adirondack's motion for partial summary judgment is denied to the extent it seeks a declaration that HSBC has a superior right of recovery over Mr. Bresler. Adirondack's motion is denied as moot to the extent it seeks a declaration that HSBC is limited in its recovery under the Policy to 50% of the value of the damage under Coverage A – Dwelling.

**B. The Extent of Mr. Bresler's Right to Recovery Under the Policy**

Adirondack seeks a declaration that Mr. Bresler's insurable interest under the Policy is limited to his interest in the Subject Property, which is 50%. *See* Dkt. No. 49-9 at 16-22. Although Mr. Bresler filed an opposition to Adirondack's motion for partial summary judgment, he did not file a memorandum of law or otherwise set forth any argument why the Policy insures more than his 50% interest in the Subject Property. *See generally* Dkt. No. 57.

The relevant facts are undisputed. Although the Bresler Defendants held the Subject Property as tenants by the entirety while they were married, their divorce in 2013 converted the tenancy by the entirety to a tenancy in common by operation of law. *See, e.g.*, *Makarchuk v. Makarchuk*, 91 A.D.3d 1313, 1315 (4th Dep't 2012) ("Upon entry of the divorce decree, the parties' tenancy by the entirety in the marital residence converted to a tenancy in common as a matter of law.") (citations omitted). Ms. Stohr remains on the deed and is an owner of record of the Subject Property, Dkt. No. 48-4, and the Marital Agreement contemplates that the "net proceeds" of any sale of the Subject Property will be "equally divided" between Mr. Bresler and Ms. Stohr, Dkt. No. 49-5 at 21. Thus, the record before the Court indicates that Mr. Bresler and Ms. Stohr are 50/50 owners of the Subject Property as tenants in common.

The language of the Policy is also straightforward and unambiguous. *See Town of Harrietstown v. Westchester Fire Ins. Co.*, No. 24-cv-1184 (MAD/DJS), 2025 WL 2391758, at *10 (N.D.N.Y. Aug. 18, 2025) (noting that "[u]nambiguous provisions" in an insurance policy are "interpreted according to their plain and ordinary meaning") (citation and internal quotation marks omitted). It is undisputed that Mr. Bresler is the only named insured on the Policy, and that Ms. Stohr—who has not resided at the Subject Property for years—does not otherwise fall within the Policy's definition of "insured." *See* Dkt. No. 49-3 at 71; *see supra* Section I.B. Further, the Policy limits Adirondack's liability to any insured to the "amount of such 'insured's' interest at the time of loss." Dkt. No. 49-3 at 84. Thus, the question is whether Mr. Bresler's insurable interest in the Subject Property extends to 100% of the value of the Subject Property or is limited to 50% of the value in accordance with his ownership interest. *See Converse v. State Farm Fire & Cas. Co.*, 681 F. Supp. 3d 4, 24 (N.D.N.Y. 2023) (noting that the "existence of an insurable interest, however, it not of itself sufficient to confer benefits under a policy extending coverage for property damage" and that the "policy terms define 'who is covered and the extent of the coverage'") (citation omitted).

*Gilbert v. Allstate Insurance Co.*, 95 A.D.3d 1072 (4th Dep't 2012), is directly on point. There, the plaintiff owned property as a tenant in common with a business partner and procured insurance on the property in his own name only. *Id.* 1073. The insurance company paid the plaintiff "one-half of the value of the property on the ground that the plaintiff had only a one-half insurable interest in the property." *Id.* The plaintiff sought to recover the full value of the premises, arguing that a tenant in common has an "undivided right to the full use, enjoyment, and possession of the entire property." *Id.* The Fourth Department held that "[w]hen two cotenants own real property which is damaged by a fire and insurance is procured in the name of only one cotenant, recovery

under the policy is limited to the insured co-tenant's one-half interest in the real property." *Id.* Applying the same reasoning to this case, Mr. Bresler's right to recovery under the Policy is limited to his one-half interest in the Subject Property as a tenant in common. *See also Graziane v. Nat'l Sur. Corp.*, 120 A.D.2d 773, 775 (3d Dep't 1986) (noting that "[a]bsent specific language to the contrary, the policy will be construed as covering the interest of each spouse separately" and that "[w]here one individual with an interest in property has obtained insurance to protect his interest and another person with an interest in the same property fails to protect his interest, the imprudent person who failed to obtain protection does not have a right to recover against the covered individual in the event the property is damaged or destroyed"); *Azzato v. Allstate Ins. Co.*, 99 A.D.3d 643, 648 (2d Dep't 2012) (concluding that tenant in common's insurable interest in the subject dwelling "was limited to 50% of the value of that dwelling"); 3 Couch on Insurance § 42:46 (3d ed.) ("A tenant in common has an insurable interest to the extent of the interest in the property.").[10]

Accordingly, Adirondack is entitled to a declaration that Mr. Bresler's insurable interest under the Policy is limited to his interest in the Subject Property, i.e. 50% of the value of the dwelling.

### C. Ms. Stohr's Right to Recovery Under the Policy

Finally, Adirondack's motion also seeks a declaration that Ms. Stohr has no right of recovery under the Policy. Neither HSBC nor Mr. Bresler has offered an argument in this regard, and Ms. Stohr has not appeared in this action. The Court therefore declines to declare the rights of

[10] HSBC argued that "[b]ecause a single tenant in common has a right of possession in the entire undivided property, it naturally follows that a single tenant has an insurable interest in the entire property." Dkt. No. 42-10 at 12. HSBC provides no authority to support this assertion, and this is the exact argument rejected in *Gilbert*. HSBC argues, without explanation, that *Gilbert* was "likely wrongly decided" but does not point to any contrary authority. *See* Dkt. No. 51 at 10 n.4.

Ms. Stohr at this time and denies this portion of Adirondack's motion without prejudice to raising the issue in a properly supported motion for default judgment against Ms. Stohr.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that HSBC's motion for partial summary judgment, Dkt. No. 42, is **DENIED**; and it is further

**ORDERED** that Adirondack's motion for partial summary judgment, Dkt. No. 49, is **GRANTED** to the extent it seeks a declaration that Mr. Bresler's insurable interest under the Policy is limited to his interest in the Subject Property, i.e. 50% of the value of the dwelling; and it is further

**ORDERED** that Adirondack's motion for partial summary judgment is **DENIED** without prejudice to the extent it seeks a declaration that Ms. Stohr has no right of recovery under the Policy; and it is further

**ORDERED** that Adirondack's motion for partial summary judgment is otherwise **DENIED**; and it is further

**ORDERED** that the parties are directed to meet and confer and to file a joint status report by October 30, 2026 regarding the status and progress of this litigation.

**IT IS SO ORDERED.**

Dated: September 29, 2026

Elizabeth C. Coombe
U.S. District Judge